CENTRAL NATIONAL INSURANCE CO., a Nebraska Corporation authorized to do business in the State of Florida, Plaintiff,

v.

TRANSIT CASUALTY COMPANY OF ST. LOUIS, MISSOURI, a Foreign Corporation, Defendants.

No. 70–186–Orl–Civ–Y.

United States District Court, M. D. Florida, Orlando Division.

Sept. 9, 1970.

As Amended Jan. 6, 1977.

Monroe E. McDonald, Sanders, McEwan, Mims & McDonald, Orlando, Fla., for plaintiff.

Janis M. Halker, John Sewell, Gurney, Gurney & Handley, Orlando, Fla., for defendants.

## OPINION

GEORGE C. YOUNG, Chief Judge.

This cause is before the Court for summary final judgment of the controversy between the remaining parties, Central National Insurance Company, plaintiff, and Transit Casualty Company of St. Louis, defendant, concerning contribution between the two insurers for amounts paid on behalf of their insureds as a result of litigation in the Florida State Courts.

This cause arose out of a collision which resulted in the death of a young woman. The car driven by the woman, Mrs. Bartlett, was struck by a Mack Truck driven by Bobby Bowman, which truck had been leased from the owner, Leaseco, Inc., a Tennessee corporation. The woman's husband brought a wrongful death action in State court against Bowman and others alleged to be responsible for the negligent operation of the truck, including Belford Trucking Company, Inc. (Belford) under whose I. C. C. certificate Bowman had been operating; Leaseco, Inc., the alleged owner of the truck; and Transit Casualty Co. (Transit), Leaseco's liability insurer. Belford later brought in Central National Insurance Co. (CNI) which had coverage on the tractor unit through the Belford Truckers Association (BTA).

Transit had a $1,000,000 policy covering Leaseco and the lessee of trucks owned by

Leaseco and their employers. Leaseco also apparently had certain types of lease arrangements (usually long term leases) in which the lessee agreed to obtain its own liability insurance in the amount of $100,000 and in those instances Transit covered only Leaseco and only on an excess insurance basis.

Leaseco paid premiums calculated on a gross receipts basis, and included in the gross receipts the rentals received from lessees that were not under agreement to procure their own insurance. For those lessees, Transit's insurance was primary insurance.

Belford Trucking Co. was a self-insurer, and it was held liable on the basis of its ICC certificate under which it hired owner-drivers to operate and upon which it was held vicariously liable for the operation of said vehicles on the highway.

Bobby Bowman was driving the truck which was leased from Leaseco, but as a member of the Belford Truckers Association, an association of owner-operators who were under contract to Belford Trucking Company and operating under Belford's ICC permit.

Central National had a $50,000 policy which covered the individual leased operators of the Belford Trucking Co. under limited circumstances (bobtail coverage, tractors not pulling trailers) (although this limitation was not upheld by the State Court.) Therefore, CNI was brought into the state suit as having potential coverage for the Bowmans.

In the state action, liability was stipulated and the case went to the jury for determination of damages, resulting in a verdict for Bartlett in the amount of $117,000. Prior to verdict however, Belford and CNI contributed to a settlement in the amount of $65,000 (CNI–$42,500; Belford–$22,500) in return for an agreement by plaintiff (Bartlett) that he would not attempt to collect from these defendants any further amounts regardless of the amount of the jury award, but would seek satisfaction from the defendants not a party to the agreement, i. e. Leaseco & Transit. The

State Court upheld this agreement and allowed Transit a setoff in the amount of $65,000 from the amount of the final judgment.

Belford attempted in the State Court action to counterclaim against Transit for the amount it contributed to the settlement, but the trial court would not permit it at that stage in the proceedings and so Belford brought this action in this court seeking to recover that amount from Transit. CNI joined in the action here, also seeking to recover the amount it contributed to the settlement. Transit counterclaimed against both parties denying its liability for the loss sustained by the Bartletts.

In the State Court action, Belford had cross-claimed against the Bowmans for the amount which it had contributed to the settlement ($22,500). This was on the basis of seeking indemnification from one primarily liable by one secondarily liable; the state court had held that Belford had this right at common law.

Belford obtained a judgment against the Bowmans and instituted a garnishment action against Transit as garnishee to satisfy the judgment. This was the second state court proceeding which caused the stay of this action.

Belford was successful in the garnishment action and recovered the $22,500 plus costs and attorney's fees.

Basically CNI contends that the state courts have finally determined that both Transit and CNI's policies cover the Bowmans and thus the only question remaining is who should bear the loss, and in what proportion. CNI claims Transit is the primary insurer (as indicated in Condition 6 of the Transit policy) and therefore it should bear the entire loss and should reimburse CNI for the amount which CNI contributed to the settlement.

Transit on the other hand contends that CNI is the primary insurer and that it should bear the loss to the extent of its full policy limits ($50,000), and that Transit is then entitled to reimbursement from CNI in the amount of $7,500 (difference between

**8**

policy limits and amount paid in settlement), plus costs and attorney's fees.

This case was stayed several times to permit completion of state proceedings including appeals. During the interval since filing of the case at bar and the present date several important decisions have been rendered by both federal and state courts which are determinative of this case.

██ *Roth v. Old Republic Insurance Co.*, 269 So.2d 3 (Fla.1972) makes it clear that in Florida the insurer of the owner of a vehicle is primarily liable to persons injured as a result of the negligence of a person operating that instrumentality with the owner's consent.[1] *Diversified Services, Inc. v. Jackson*, 330 So.2d 830 (D.C.A. 3, 1976) holds that the insurance carrier for the owner primarily liable for the tort of a lessee has no right of indemnity from the lessee even though the lessee may have been at fault.

██ In *Belford Trucking Co. v. Bartlett*, 299 So.2d 608 (D.C.A. 4, 1974) the Florida District Court of Appeal held that Transit's policy with Leaseco provided the primary insurance for Bowman as the lessee. In view of the cases abovecited, Transit is primarily liable to the extent of the limits of its policy ($1,000,000) and has no right of indemnity against Belford or its carrier CNI. Therefore, CNI is entitled to recover the amount it contributed to the settlement ($42,000) plus interest from the date of payment to the date hereof in the amount of $13,422.45 (5 years, 3 months and 5 days at 6% per annum) for a total judgment of $55,922.45.

## JUDGMENT

In accordance with the Opinion entered simultaneously herewith, as amended on January 6, 1977, judgment is entered herein in favor of Central National Insurance Company and against Transit Casualty Company of St. Louis, Missouri in the total amount of $55,922.45 ($42,500 plus interest of $13,422.45).

---

1. In *Rouse v. Greyhound Rent-A-Car*, 506 F.2d 410 (1975), the Fifth Circuit Court of Appeals stated ". . . Florida case law has established the principle that the insurer of the owner of a vehicle is primarily liable to persons injured as a result of the negligence of a person operating that instrumentality with the owner's consent."